The STATE of Ohio, Appellee,

v.

NORMAN, Appellant.

[Cite as *State v. Norman* (1999), 136 Ohio App.3d 46.]

Court of Appeals of Ohio,
Third District, Auglaize County.

No. 2–99–25.

Decided Dec. 20, 1999.

48

S. Mark Weller, Public Defender, for appellant.

*Edwin Pierce*, Prosecuting Attorney, *R. Andrew Augsburger*, Assistant Prosecuting Attorney, for appellee.

---

THOMAS F. BRYANT, Presiding Judge.

Defendant-appellant, Charles T. Norman Jr., appeals from the journal entry of the Auglaize County Municipal Court denying his motion to suppress.

On December 6, 1998, appellant was arrested by Ohio State Trooper Lisa Miller and cited for violating R.C. 4511.19(A)(1), operating a motor vehicle while under the influence of alcohol (OMVI). On February 26, 1999, appellant filed a motion to suppress and a hearing on the motion was held on May 11, 1999.

At the suppression hearing, Miller testified to the following facts: (1) at approximately 2:43 a.m., she was traveling south on CR25A when she crested a hill near Hauss Road in Auglaize County, (2) she observed a vehicle stopped at a stop sign at the intersection of Infirmary Road and CR25A, (3) the vehicle remained stationary at the intersection as Miller traveled approximately one-quarter mile to Infirmary Road, (4) the vehicle remained stopped as she traveled another one-half mile past Infirmary Road to the Duchouquet Township House, (5) there was no other traffic in the area at the time, (6) Miller turned around at the Township House and returned to the intersection of Infirmary Road and CR25A where the vehicle was still stationary, and (7) Miller turned left onto Infirmary Road, activated her overhead lights, and pulled alongside the vehicle to inquire the reason for its sitting at the stop sign.

Miller further testified that from the time she first observed the vehicle stopped at the intersection until she pulled alongside it approximately one and one-half to two minutes had elapsed. That is, she observed the automobile remain stationary at the intersection of Infirmary Road and CR25A for at least approximately one and one-half to two minutes. Miller further testified that because there were no other vehicles in the area at the time, it was highly unusual for a vehicle to remain stopped at the intersection for that length of time. She testified that she was concerned for the safety of other motorists as well as the passengers of the stationary vehicle.

With respect to why Miller approached the vehicle, the following colloquy between her and the prosecutor is relevant:

Q. "Trooper, why is it that you wanted to stop and speak to the driver of the vehicle?"

A. "Well it is highly unusual for anyone to be stopped at the intersection for that amount of time, knowing that there is not traffic around, and there has been instances where vehicles have been broken down at intersections. I have been on

instances where subjects have been passed out at the wheel as intersections, and I just needed to clarify to see if there was any problem at all."

Q. "So safety was your concern?"

A. "Yes Sir."

Q. "Not just for other motorists, but for passengers of that vehicle?"

A. "That is correct. I did not know what the problem was."

On direct examination, Miller did not indicate that she believed appellant was or had been engaging in criminal activity.

On cross-examination, Miller confirmed that she did not return to appellant's stationary vehicle because she believed a crime had been committed or was in progress. Rather, Miller reasserted that she returned to investigate the reasons for the unusual circumstances presented.

On May 19, 1999, the trial court entered its judgment entry denying appellant's motion to suppress. In its journal entry, the trial court concluded the following facts represented the correct version of the encounter between Miller and appellant:

"The officer testified that she observed defendant's vehicle stopped at a stop sign, late at night at a rural intersection. She was approximately ¼ mile from the intersection. The vehicle remained at the intersection as she passed and continued to stay at the intersection while the officer proceeded south. Since the vehicle did not move from its location, the officer testified that she turned at the township house about ½ mile down the road and proceeded back to the intersection. The defendant's vehicle was still stopped at the stop sign. She turned onto the side road and pulled up along side the defendant's vehicle. She was advised by the defendant that he was stopped there while he and his passenger decided whether they were going home or for a breakfast. The officer turned to park behind the defendant and proceeded with further investigation."

On June 22, 1999, appellant changed his plea of not guilty to one of no contest and was found guilty by the trial court on that same day. Appellant was sentenced to serve three (3) days in jail, fined $500.00, plus costs, and had his license suspended for one year. The jail time and $300.00 of the fine were suspended on condition of completion of a driver intervention program within ninety days and adherence to the recommendations of the session.

It is from the denial of appellant's motion to suppress that he brings this appeal, asserting one assignment of error:

"The trial court erred when it failed to grant the defendant's Motion to Suppress on the grounds that his arrest was the result of an illegal search and seizure on the part of the State of Ohio, in violation of his constitutional rights as

guaranteed by the Fourth Amendment to the United States Constitution and Article One, Section 14 of the Constitution of the State of Ohio."

We note that in his motion to suppress appellant initially asserted that " * * * the arrest was made without probable cause and that the initial stop by the officer was illegal, as it was made without articulable suspicion as to the fact that any offense had been committed." At the suppression hearing, however, appellant's trial counsel stated that the only issue being contested was the initial stop.[1] With this limitation in mind, we turn to the merits of appellant's assignment of error.

We begin our review of the motion to suppress ruling by noting the applicable standards of review for this court.

 Review of a motion to suppress ruling involves a mixed question of law and fact. *United States v. McConney* (C.A.9, 1984), 728 F.2d 1195; *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119; *United States v. Mejia* (C.A.9, 1991), 953 F.2d 461, 464–465; *United States v. Wilson* (C.A.11, 1990), 894 F.2d 1245, 1254. In a motion to suppress, the trial court assumes the role of the trier of facts, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, *e.g., State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584; *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137; *State v. Payne* (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61–62; *State v. Robinson* (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18, 25; *State v. Rossiter* (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645, 648. The weight of the evidence is also primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus; *State v. Smith* (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668, 685;

---

1. A review of the transcript of the suppression hearing reveals the following colloquy between the trial court judge and appellant's trial attorney:

*Court* :

"At this time we would be proceeding in case 98 TRC 7598, State of Ohio vs. Charles Thomas Norman Junior. Motion to Suppress. Mr. Weller any opening comments that you wish to make before we proceed with evidence in the case?"

*Attorney-at-law S. Mark Weller* :

"Only that Mr. Augsburger and I have talked about it and we are only contesting the stop your honor."

*Court* :

"So reasonable articulable suspicion?"

*S. Mark Weller* :

"Correct"

*Court* :

"And I believe that that's really all the motion went into with regard to this."

*S. Mark Weller* :

"That's correct."

*State v. Brooks* (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030, 1036–1037; *Fanning,* 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585.

Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Brooks,* 75 Ohio St.3d at 154, 661 N.E.2d at 1030; *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143; *United States v. Lewis* (C.A.1, 1994), 40 F.3d 1325, 1332; *State v. Harris* (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. *Id.; Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Harris, supra,* 98 Ohio App.3d at 546, 649 N.E.2d at 9; *Anderson,* 100 Ohio App.3d at 691, 654 N.E.2d at 1036; see, also, *Lewis, supra,* 40 F.3d at 1332; *Wilson, supra,* 894 F.2d at 1254. With these principles in mind, we turn to the issue raised by the parties in their briefs.

When a police officer stops a motor vehicle and detains its occupants, he has seized it and its occupants within the meaning of the Fourth Amendment to the United States Constitution. See *Terry v. Ohio* (1968), 392 U.S. 1, 8, 9, 88 S.Ct. 1868, 1872, 1873, 20 L.Ed.2d 889, 898, 898–899; *Berkemer v. McCarty* (1984), 468 U.S. 420, 437–439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317, 332–334; *United States v. Mendenhall* (1980), 446 U.S. 544, 556–557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497, 510–512 (opinion of Stewart J.); *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The ultimate standard set forth in the Fourth Amendment is reasonableness.

The law governing investigative stops of automobiles is clear. The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. *Terry,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889, 905–906; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273. It is well settled that before stopping a vehicle, a law enforcement officer

must have reasonable suspicion, based on specific and articulable facts that an occupant is or has been engaged in criminal activity. See *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660; *State v. Ball* (1991), 72 Ohio App.3d 43, 46, 593 N.E.2d 431, 433–434, citing *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, and *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

Thus, if the specific and articulable facts indicate to the officer that the driver of an automobile may be committing a criminal act, which includes a violation of a traffic law, the officer can justifiably make an investigative stop. *State v. Carlson* (1995), 102 Ohio App.3d 585, 593, 657 N.E.2d 591, 596–597; *State v. Cole* (Sept. 13, 1995), Wyandot App. No. 16–94–11, unreported, 1995 WL 551110. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091, 1095–1096; *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162.

Assuming arguendo that the encounter between Miller and appellant was a "seizure" sufficient to trigger the protections of the Fourth Amendment,[2] our analysis begins with an inquiry into the justification, if any, for Miller's investigation at its inception. As discussed extensively *supra,* the trial court made particular findings of fact that were reflective of the correct version of the encounter between Miller and appellant. Because we are required to accept those findings of fact, we must determine, as a matter of law, whether such facts meet the applicable legal standard.

While *Terry* and much of its progeny stand for the proposition that a police officer generally needs a reasonable suspicion, based on specific and articulable facts, that an occupant of a vehicle is or has been engaged in *criminal* activity, nothing in the Fourth Amendment requires that the "specific and articulable facts" relate to suspected criminal activity. Were we to insist that every investigative stop be founded on such suspicion, we would be overlooking the police officer's legitimate role as a public servant designed to assist those in distress and to maintain and foster public safety. That is, law enforcement officers may legitimately approach persons and vehicles for purposes other than criminal investigation. As the Supreme Court of the United States has stated:

"Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving

---

2. Were we to conclude that appellant was not "seized" within the meaning of the Fourth Amendment, the encounter between Miller and appellant would have been a consensual one and the protections afforded by the Fourth Amendment would not apply.

automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers * * * frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as *community caretaking functions*, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." (Emphasis added.) *Cady v. Dombrowski* (1973), 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706.

■■■■■ Clearly, under appropriate circumstances a law enforcement officer may be justified in approaching a vehicle to provide assistance, without needing any reasonable basis to suspect criminal activity. See *State v. Langseth* (N.D. 1992), 492 N.W.2d 298, 300; *State v. Brown* (N.D.1993), 509 N.W.2d 69; *People v. Murray* (1990), 137 Ill.2d 382, 148 Ill.Dec. 7, 560 N.E.2d 309; *Crauthers v. Alaska* (Alaska App.1986), 727 P.2d 9; *State v. Pinkham* (Me.1989), 565 A.2d 318; *State v. Marcello* (Vt.1991), 157 Vt. 657, 599 A.2d 357; *State v. Oxley* (N.H.1985), 127 N.H. 407, 503 A.2d 756. Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out "community caretaking functions" to enhance public safety. The key to such permissible police action is the reasonableness required by the Fourth Amendment. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base her safety concerns. Such a requirement allows a reviewing court to answer *Terry's* fundamental question in the affirmative: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

This court has recognized that:

" '[A]n officer is obliged to render assistance to disabled vehicles or stranded motorists.* * *Therefore, a police officer* * *may inquire of the occupants of a vehicle so stopped and such a preliminary inquiry [is] not so exceedingly onerous so as to be unreasonable.' " *City of Marysville v. Mushrush* (June 18, 1999), Union App. No. 14–99–07, unreported, 1999 WL 455397, quoting *State v. Vanderhoff* (1995), 106 Ohio App.3d 21, 24, 665 N.E.2d 235, 237.

Other appellate districts have recognized this obligation. See, *e.g., State v. Smith* (Oct. 16, 1995), Madison App. No. CA95–03–009, unreported, 1995 WL 605441 (the mere fact that officer activated flashing lights after pulling behind stationary vehicle did not turn a consensual encounter into a traffic stop or seizure where vehicle was already stopped and officer was concerned about safety); *State v. Pelsue* (May 23, 1997), Portage App. No. 95–P–0149, unreported,

1997 WL 286174 (where officer was concerned only with safety of the occupants of a truck parked in the middle of the road with the lights illuminated, engine running, and turn signal on, inquiry about assistance was reasonable); *State v. Thayer* (Aug. 31, 1990), Clark App. No. 2667, unreported, 1990 WL 125704 (where car was pulled off to the side of the road, next to a cornfield, between 2 and 3 a.m., contacting occupants to see if assistance is needed is reasonable).

In the case at bar, Miller observed an automobile parked at an intersection at 2:43 a.m. Although the lights were on and the motor appeared to be running, the vehicle remained stationary at the intersection for an extended period of time (approximately two minutes) and for no apparent reason. She was obliged to determine whether the occupants of the possibly disabled vehicle needed her assistance. We agree with the Fourth District Court of Appeals in concluding "[t]here is nothing in either the state or federal Constitution that prohibits law enforcement from approaching, and engaging in conversation with, a motorist who they believe may be in need of assistance." See *State v. Long* (1998), 127 Ohio App.3d 328, 334, 713 N.E.2d 1, 4–5. Again, a contrary conclusion would serve to undermine much of what law enforcement is intended to address.

Accordingly, we hold that Miller's reasons for stopping appellant's vehicle were sufficient to justify the stop. Miller possessed specific and articulable facts sufficient to support a reasonable concern for the condition of the vehicle, the safety of the occupants, and the safety of other motorists, and the most reasonable course of action under the circumstances was to approach the vehicle to determine if assistance was needed. We think it clear that a law enforcement officer in Miller's position would have made an objectively reasonable decision to approach appellant's vehicle to determine whether there was any problem requiring assistance. As appellant elected at the suppression hearing to not address what took place after the initial encounter, we do the same.

We pause to note that we are mindful that this is the first instance where this court has recognized community caretaking functions as a justification to support the seizure of an automobile and its occupants. We are equally mindful however that the approach we adopt today is in accord with the Ohio Supreme Court as well as decisions from other appellate districts. See *State v. Morris* (1975), 42 Ohio St.2d 307, 71 O.O.2d 294, 329 N.E.2d 85 (where officer unlocked bag at the request of a baggage agent, officer was engaging in community caretaking function). Furthermore, our decision today is consistent with our previous decision in *Bucyrus v. Lewis* (1990), 66 Ohio App.3d 256, 583 N.E.2d 1114, relying on *Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617, wherein we held that a brief stop of a suspicious individual, in order to determine his identity or to maintain the *status quo* momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

**56**

Finding no error prejudicial to appellant, in the particulars assigned and argued, the judgment of the Auglaize County Municipal Court is affirmed.

*Judgment affirmed.*

HADLEY and SHAW, JJ., concur.