OPINION
Defendant-Appellant, Brad Nietfeld, appeals his conviction from the Auglaize County Municipal Court, Traffic Division, on a plea of no contest to a charge of operating a motor vehicle while under the influence of alcohol. For the following reasons, we affirm the decision of the trial court.
On July 3, 2000, at approximately 1:25 a.m., Brad Nietfeld ("Appellant") was observed pulling his car into the Minster Gas America station by Sergeant Elizabeth Stine of the Minster, Ohio Police Department. While Appellant proceeded to pump his gas, he continually glanced over at Sergeant Stine, and she testified that the glances appeared to be paranoid behavior. After paying for his gas, Appellant drove away from the station unusually slow. As a result of this suspicious behavior, Sergeant Stine thought there was potential trouble afoot, and she decided to follow Appellant in her cruiser. Appellant then made an abrupt left-hand turn onto a dead-end road, parked and exited his vehicle, and then ran, on foot, through the residential yards located there.
Once Appellant fled, Sergeant Stine summoned aid from other on-duty officers by releasing a description of Appellant over her police radio. Within minutes, Appellant was located back at the Gas America station by Patrolman Pyles of the New Bremen, Ohio Police Department and Patrolman Overly of the Minster Police Department. Initially, Appellant stated that he was not the man they were looking for. However, shortly thereafter the officers were joined by Sergeant Stine, who identified Appellant as the man she was previously following. Also, two other witnesses gave statements that Appellant was the man who Sergeant Stine had been observing moments earlier at the gas station.
All three officers noticed an odor of alcohol emanating from Appellant's person, and Patrolmen Overly and Pyles testified that his eyes were red and glassy.
The officers then requested Appellant to perform several field sobriety tests. Appellant submitted to the horizontal gaze nystagmus ("HGN") test and exhibited all six clues, which infers intoxication above the legal limit for operating a vehicle.
Based upon the foregoing, Appellant was arrested for violation of R.C.4511.19, operating a vehicle while under the influence of alcohol ("OMVI"). Once in police custody, Appellant submitted to a breathalyzer test and tested .197 grams of alcohol per 210 liters of breath.
On November 8, 2000, a suppression hearing was held and Appellant's motion to suppress the evidence from the HGN and Breathalyzer tests was overruled. Thereafter, Appellant changed his not guilty plea to that of no contest. From the denial of his motion to suppress and the change of plea, Appellant brings this appeal and asserts the following five assignments of error. Because assignments one and two and assignments three and four are sufficiently related, they will be discussed together.
 Assignment of Error I Trial court erred in denying Defendant's motion to suppress because the state had insufficient reasonable articulable suspicion to stop the defendant.
 Assignment of Error II Trial court erred in denying Defendant's motion to suppress because it was "unreasonable" within the meaning of the Fourth Amendment, for the officer to detain Appellant for purposes of conducting field sobriety tests when the officer had no reason to believe that Appellant was intoxicated.
An appellate review of a motion to suppress involves questions of both law and fact.[1] For motions to suppress, the trial court becomes the trier of fact and, as such, is in the best position to evaluate questions of fact, witness credibility,[2] and the weight of the evidence.[3]
Consequently, in our review, we are bound to accept the trial court's findings of fact that are supported by competent, credible evidence.[4]
The application of the law, however, to the trial court's findings of fact is subject to a de novo standard of review by appellate courts.[5]
The United States Supreme Court has recognized that whenever a police officer accosts an individual and restrains his freedom to walk away the Fourth Amendment's prohibition against unreasonable seizures is implicated.[6] Therefore, in order for police to detain someone for preliminary investigative purposes absent probable cause of wrongdoing, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[7] When evaluating such intrusions, courts must judge the facts against an objective standard: "would the facts available to the officer at the moment of the seizure * * * `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[8] In other words, articulable facts must lead to a police officer's reasonable suspicion based upon the totality of the circumstances that criminal activity has or is about to occur.[9]
Appellant claims that there were no articulable facts, in this case, giving rise to a reasonable suspicion on the part of the police to accost him and begin an investigatory detention, including the administration of field sobriety tests. For the following reasons, we disagree.
Several facts, when taken together, warranted the stop and initial questioning of Appellant. First, when Appellant stopped his car at the gas station, Sergeant Stine observed his continual glances in her direction, which piqued her curiosity that Appellant possibly was engaging or had engaged in some-kind of criminal behavior. Based on her curiosity, she continued to monitor Appellant who proceeded extremely slowly out of the gas station parking lot. Because Sergeant Stine believed something was wrong, she followed Appellant in her cruiser. Shortly thereafter, she observed Appellant make an abrupt left-hand turn onto a dead-end street. Appellant then parked his car on the side of the street and ran away between the residential houses located in the area.
The unprovoked flight subsequent to already suspicious behavior gave Officer Stine the requisite articulable facts to detain Appellant in order to resolve the ambiguities in his conduct.[10] Furthermore, "[h]eadlong flight — whenever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."[11] Consequently, because the reasonable suspicion necessary for initial investigatory stops by police officers is a "less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, the Fourth Amendment [only] requires * * * a minimal level of objective justification[,]"[12] which we find to be present based upon the above stated facts.
Once the police detained Appellant, all three officers noticed an odor of alcohol emanating from his person. Additionally, Appellant's eyes were particularly bloodshot and glassy. Appellant contends that these facts, in conjunction with his prior evasive behavior, did not give the police a reasonable justification to request Appellant's participation in field sobriety testing.
In order for a police officer to conduct field sobriety tests, the police must reach the threshold inquiry of whether reasonable suspicion of criminal activity is present.[13] Therefore, the higher standard of probable cause is not necessary before field sobriety tests can be administered.[14] The odor of alcohol and Appellant's red and glassy eyes compounded the already established reasonable suspicion to detain him and, in turn, provided sufficient reasonable suspicion to conduct field sobriety tests for a possible OMVI charge. Therefore, the police were justified in conducting the field sobriety tests.
Because we find the police, in this case, had a reasonable suspicion to initially detain Appellant and to conduct field sobriety tests, Appellant's first and second assignments of error are overruled.
 Assignment of Error III Trial court erred in failing to exclude the HGN test not conducted in strict compliance with standardized testing procedures in weighing the probable cause to arrest.
 Assignment of Error IV Trial court erred in finding probable cause for the arrest of the defendant due to there being no illegal driving and insufficient indicia of impairment.
Appellant maintains that the HGN test administered by the police prior to his arrest was not conducted in strict compliance with the National Highway Traffic Safety Administration's ("NHTSA") standardized procedures and thus, should not have been weighed in determining whether there was probable cause to arrest.
The Ohio Supreme Court recently held that, in order for field sobriety tests to serve as evidence for a probable cause to arrest determination, "the police must have administered the test in strict compliance with standardized testing procedures."[15] Upon direct examination of the police officer that conducted the HGN test herein, testimony revealed, in great length, his exact procedures utilized while conducting the test. Also, this testimony revealed that Appellant exhibited all six clues during the test, which justifies the officer's belief that he was driving impaired. During this testimony, Appellant neither objected, nor did he make a motion to strike the testimony on grounds of noncompliance with the standardized testing procedures. Accordingly, the issue of whether the HGN test was conducted pursuant to NHTSA procedure was not properly preserved for our review upon appeal.
Notwithstanding Appellant's failure to preserve the issue for appeal, we find that there was sufficient evidence without the HGN test to buttress a finding of probable cause for the arrest of Appellant.
 The existence of probable cause is determined by factual and practical considerations of everyday life on which reasonable and prudent men act. In examining these factual and practical considerations the focus is on whether, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which he had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed an offense.[16]
Even without considering the HGN test results, which we are not required to do, the accumulation of several facts and circumstances were sufficient to justify Appellant's arrest for OMVI. The evidence against Appellant began to accumulate from the initial observation of him by Sergeant Stine. The seemingly paranoid glances towards Officer Stine, the distinct slowness of his driving in front of the gas station, his abrupt turn onto the dead-end street, his flight from his car, the odor of alcohol emanating from his person, and his red and glassy eyes are all taken in consideration when formulating the decision of whether probable cause was indeed present. Additionally, testimony supports that Appellant initially stated to the officers that he was not the man attempting to flee and that he was not the man they were looking for, despite several witnesses to the contrary, including Sergeant Stine. When these factual considerations are examined, there is sufficient evidence to warrant a cautious person in believing that Appellant had committed the offense for which he was arrested.
Accordingly, Appellant's third and fourth assignments of error are not well taken and are, therefore, overruled.
 Assignment of Error V Trial court erred in denying the defendant's motion to suppress evidence of the BAC datamaster test results when not properly checked for RFI, when there was no proof of the expiration date of the calibration solution used to check the machine, when the machine was not being operated in compliance with the manufacturers electrical dictates and when the state failed to generally show the reliability of the instant machine for admissibility purposes. Such error includes the shifting of the burden of proof to the defendant.
The admissibility of test results to establish alcohol concentration under R.C. 4511.19 turns upon whether the State substantially complied with Ohio Department of Health regulations.[17] Once established, the burden then shifts to the defendant-appellant to show that he was prejudiced by the failure to strictly comply with the regulations.[18]
Without a demonstration of prejudice, the State may utilize the results in its prosecution.[19]
Appellant raises several issues within this assignment of error and each will be discussed in turn. Initially, Appellant contends that the results of the Breathalyzer test should have been suppressed because the test machine had not been properly checked for radio frequency interference ("RFI"). For the following reasons, we disagree.
Appellant asserts that the breath-testing machine should have been checked by all transmitting radios that operate in the area of the machine. According to Ohio Adm. Code 3701-53-04, however, Appellant's contention is misplaced. Adm. Code 3701-53-04 states that the Breathalyzer test machine "shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency."[20] The testimony, in this case, demonstrates that an Ohio State Highway Patrol trooper conducted the RFI check and that he utilized his state issued handheld radio to conduct the test. Therefore, the test was conducted pursuant to Adm. Code 3701-53-04. In response, Appellant put forth no evidence supporting his assertion that he was prejudiced by the manner in which the State tested the Breathalyzer machine for RFI. For these reasons, the trial court was correct in its determination that the State substantially complied with the Department of Health regulations and that Appellant was not prejudiced by the same.
Appellant further contends that the Breathalyzer test results should have been suppressed because there was no proof of an expiration date on the calibration solution used to check the testing machine. Appellant failed, however, to support his argument pursuant to App.R. 16(A)(7), which states:
 (A) * * * The appellant shall include in its brief * * * all of the following:
* * *
 (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. * * *
Without support Appellant's contention is not apparent from the context of his argument thus leaving this court without a basis for review.
Lastly, Appellant maintains that the Breathalyzer machine was not operated in compliance with the manufacturer's directives with reference to which electrical outlets should be used for the machine. Specifically, Appellant asserts that the machine shared the same circuit with a refrigerator, which could potentially cause unreliable test results. The Ohio Department of Health, however, is silent with respect to proper circuitry methods.
Testimony supports that Appellant's Breathalyzer test was conducted in substantial compliance with the Ohio Department of Health regulations; therefore, the burden shifts to Appellant to show that he was prejudiced despite substantial compliance. As stated above, upon motions to suppress, the trial court is in the best position to weigh the evidence and witness credibility; accordingly, we give deference to the trial court's findings of fact and find that the conflicting expert testimony concerning the circuitry of the testing machine does not support Appellant's contention that the electrical circuitry prevented the performance of a valid Breathalyzer test. Consequently, Appellant did not demonstrate that he was prejudiced by the test results.
For the above stated reasons, Appellant's fifth assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
SHAW and HADLEY, JJ., concur.
[1] State v. Norman (1999), 136 Ohio App.3d 46, 51.
[2] See e.g., State v. Mills (1992), 62 Ohio St.3d 357, 366, citingState v. Fanning (1982), 1 Ohio St.3d 19, 20.
[3] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Fanning, 1 Ohio St.3d at 20.
[4] State v. Norman, 136 Ohio App.3d at 51; State v. Williams (1993),86 Ohio App.3d 37, 41.
[5] State v. Norman, 136 Ohio App.3d at 51; State v. Anderson (1995),100 Ohio App.3d 688, 691.
[6] Terry v. Ohio (1968), 392 U.S. 1, 16.
[7] Id. at 21. See, also, State v. Andrews (1991), 57 Ohio St.3d 86,87.
[8] Terry v. Ohio, 392 U.S. at 21-22.
[9] Id.; State v. Andrews, 57 Ohio St.3d at 87-88.
[10] Illinois v. Wardlow (2000), 528 U.S. 119, paragraph two of the syllabus.
[11] Id. at 124.
[12] Id. at 123, citing United States v. Sokolow (1989), 490 U.S. 1,7.
[13] State v. Richter (Nov. 15, 2000), Union App. No. 14-2000-20, unreported, citing State v. Gustin (1993), 87 Ohio App.3d 859, 860;Columbus v. Anderson (1991), 74 Ohio App.3d 768, 770.
[14] State v. Richter, supra; State v. Gustin,87 Ohio App.3d at 860.
[15] State v. Homan (2000), 89 Ohio St.3d 421, 424 (emphasis added).
[16] State v. Conover (1985), 23 Ohio App.3d 161, 162, quoting Statev. Giner (Mar. 28, 1984), Summit App. No. 11385, unreported (citations omitted). See, also, State v. Rutkowski (Aug. 25, 1995), Union App. Nos. 14-94-50, 14-94-51, 14-94-52, unreported.
[17] Cleveland v. Rees (June 24, 1999), Cuyahoga App. No. 74306, unreported, citing State v. Plummer (1986), 22 Ohio St.3d 292 . See, also, State v. Spangler (1992), 75 Ohio App.3d 530, 534; State v. Cooper
(1997), 120 Ohio App.3d 284, 299.
[18] State v. Plummer, 22 Ohio St.3d at 295.
[19] Id.
[20] Ohio Adm. Code 3701-53-04(A)(2).