OPINION
{¶ 1} The State of Ohio appeals from a decision of the Logan County Court of Common pleas which granted a motion to suppress the oral and recorded statements that defendant-appellee, Richard D. Smith, made to law enforcement officers. The state asserts that the trial court erred when it suppressed the statements on the grounds that Smith unambiguously asserted his right to remain silent. For the following reasons, we must reverse and remand to the trial court.
 {¶ 2} On April 25, 2002, Detective Jeff Cooper of the Logan County Sheriff's Office was informed by a caseworker from Logan County Children Services ("LCCS") that a fourteen year-old-girl had told caseworkers that she had been sexually abused by her step-grandfather, defendant Richard Smith. That same day, Det. Cooper went to a construction site at Bellefontaine Municipal Airport where Smith was working. Det. Cooper identified himself to Smith and requested that he come to the sheriff's office to speak with him. Smith agreed to go and was not placed under arrest, frisked, or handcuffed.
 {¶ 3} After arriving at the sheriff's office, Det. Cooper took Smith to his office and started a digital recording device to record the interview. Smith was advised of his Miranda rights[1] and signed a written waiver form which indicated that he was willing to talk to Det. Cooper. Det. Cooper explained to Smith that he was free to leave at any time and gave Smith instructions on how to exit the building.
 {¶ 4} During the interview, which lasted less than an hour, Smith made incriminating statements and admitted to engaging in sexual acts with a minor. At the interview's conclusion, Smith was placed under arrest and was booked in the county jail, which is located in the same building as the sheriff's office.
 {¶ 5} Det. Cooper then attached the digital recording device to his computer and began to download the interview onto the computer so that copies of the interview could be placed on compact discs. Due to a technical malfunction, part of the interview was recorded over leaving eighteen minutes and forty seconds of the interview intact. Upon discovering that part of the interview had been erased, a second interview was sought with Smith in an attempt to re-record his statement.
 {¶ 6} Approximately two hours after the first interview, Det. Cooper retrieved Smith from the jail and explained to him what happened with the initial recording. Smith agreed to a second interview and was again informed of his rights and signed a new waiver of rights. In the second interview, which lasted approximately fifteen minutes, Smith again admitted to engaging in sexual acts with a minor.
 {¶ 7} On August 13, 2002, the Logan County Grand Jury indicted Smith on two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04; one count of illegal use of minor in nudity oriented material or performance in violation of R.C. 2907.323(A)(1); one count of possession of cocaine, in violation of R.C. 2925.11(C)(4)(a); and one count of possession of marijuana, in violation of R.C. 2925.11(A). The case was scheduled for a jury trial to be held on January 22, 2003.
 {¶ 8} On December 2, 2002, Smith filed a motion to suppress his oral and recorded statements. A hearing on the motion was held on December 23, 2002 in which evidence was presented. The trial court then took the matter under advisement. On January 6, 2003, the trial court granted Smith's motion to suppress.
 {¶ 9} The state now appeals, asserting three assignments of error for our review.
ASSIGNMENT OF ERROR NO. I
The trial court erred in suppressing two digitally-recorded statements Richard Smith made to Logan County Sheriff Detectives on April 25, 2001, based on grounds that the Defendant invoked his right to remain silent during the first interview.
ASSIGNMENT OF ERROR NO. II
If the Defendant successfully invoked his right to remain silent during the first interview, the trial court erred in suppressing the second digitally-recorded statement Richard Smith made to Sheriff's Detectives approximately two-and-a-half hours after the first interview.
ASSIGNMENT OF ERROR NO. III
If the Defendant successfully invoked his right to remain silent during the first interview, the trial court erred in suppressing the statements Richard Smith made prior to invoking his right to remain silent.
 {¶ 10} In its first assignment of error, the state claims that the trial court erred when it ordered the suppression of Smith's oral statements to the police. Specifically, the state argues that the trial court was in error when it found that Smith had unambiguously asserted his right to remain silent. Alternatively, the state's second and third assignments of error assert that, even if Smith successfully invoked his right to remain silent, the trial court should not have suppressed the untainted portion of the first interview and the entirety of the second interview.
 {¶ 11} When hearing a motion to suppress evidence, the trial court becomes the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[2]
Consequently, an appellate court must defer to the trial court's findings of fact that are supported by competent, credible evidence.[3]
However, the application of the law to the trial court's findings of fact is subject to de novo review by appellate courts.[4] The reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court properly applied the substantive law to the facts of the case.[5]
 {¶ 12} At 1:16 p.m., April 25, 2002, Det. Cooper began Smith's interrogation by explaining to him that he was not under arrest. Smith was informed that he was free to leave at any time and was provided with directions on how to exit the building. Cooper then explained that any statements made by Smith would be voluntary and presented Smith with a standard interrogation advice-of-rights form that is used by the Logan County Sheriff's Office. In essence, the form read by Cooper administered the Miranda warnings to Smith. As his Miranda rights were read to him, Smith initialed the form next to each paragraph indicating that he understood his rights.
 {¶ 13} Once more, Cooper advised the defendant that he was under no obligation to answer any questions and could remain silent if he wished. Smith orally acknowledged his understanding, placed his initials next to the "Waiver of Rights" paragraph, and affixed his signature to the advice-of-rights form. Cooper then proceeded to question Smith about his involvement in alleged sexual activity with the victim. At various points during the interview, Smith expressed his reluctance to answer certain questions. In each instance when Smith stated that he did not want to answer a question or incriminate himself, Cooper proceeded with the interview, setting forth a different allegation and asking Smith a different question.
 {¶ 14} The trial court found that Cooper repeatedly ignored Smith's invocation of his right to remain silent and that the "uninterrupted continuing questioning" of the defendant violated Miranda
and Michigan v. Mosley.[6] Before proceeding further, we note that merely advising an individual of his Miranda rights does not necessarily imply a "custodial interrogation."[7] However, the applicability ofMiranda and whether or not this was, with regard to the first interview, a custodial interrogation was not raised by the state in the court below and is not an issue in the present appeal. Accordingly, we proceed under the assumption that Miranda is applicable to the case at bar.
 {¶ 15} The rule established in Miranda v. Arizona protects an individual who "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way" from jeopardizing his Fifth Amendment privilege against self-incrimination.[8] Specifically,Miranda provides:
* * * The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. * * * [I]f the individual is done and indicates in any manner that he does not wish to be interrogated, the police may not question him.[9]
 {¶ 16} Building on the Miranda decision, Moseley holds that "the admissibility of statements obtained after the person in custody has decided to remain silent depends * * * on whether his `right to cut off questioning' was `scrupulously honored.'"[10]
 {¶ 17} More recently, in Davis v. United States,[11] the United States Supreme Court held that "after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney. * * * [W]e decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him."[12]
 {¶ 18} The Supreme Court of Ohio has interpreted the holding ofDavis to also apply to the right to remain silent.[13] State v. Murphy
holds that "police must honor an invocation of the right to cut off questioning only if it is unambiguous."[14] The Court explained:
Although a suspect "need not `speak with the discrimination of an Oxford don," a suspect "must articulate his or her desire to remain silent or cut off questioning `sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be' an invocation of the right to remain silent. If the suspect says something that may or may not be an invocation of the right, police may continue to question him; they need not treat the ambiguous statement as an invocation or try to clear up the ambiguity.[15]
 {¶ 19} Thus, the state's appeal turns on whether Smith's statement was an unambiguous invocation of his right to remain silent or cut off questioning.
 {¶ 20} The trial court found, based upon the evidence received at the suppression hearing on this matter and the judge's personal review of the surviving recording of the actual interview, that the defendant manifested an unmistakable desire to stop talking to the police interviewer during the interrogation.
 {¶ 21} Although we might not reach the same conclusion as did the trial court, we do not as an appellate court have the authority to reverse what we believe to be a mistake on the part of that court unless that mistake rises to the level of an abuse of discretion.[16] More than an error of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.[17]
Upon review of the record herein, we are unable to find that the trial judge abused the discretion that is reposed in him in this matter. Accordingly, we must overrule the first assignment of error.
 {¶ 22} In addition, the trial court, having found that Smith incriminated himself when his right to remain silent was not scrupulously honored, determined that the second interview should be suppressed for being "fruit of the poisonous tree."
 {¶ 23} The second interview took place approximately two hours after the first interview and was necessitated by a technological error in transferring the initial interview from the digital recording device onto Det. Cooper's computer. During this interview, Smith was read hisMiranda rights and, again, signed a waiver of those rights. Smith was also made aware that he could stop the interview at any time by saying "I don't want to talk to you." At no point in the second interview did Smith protest or refuse to answer any questions.
 {¶ 24} After reviewing the record and the applicable law, we conclude that neither the evidence nor the law supports the trial court's sweeping suppression of all of Smith's statements in each of the April 25, 2002 interrogations. As the transcript indicates, Smith waived his right, both orally and in writing, to remain silent. Thus, we find that Smith's statements in the first interview, up and until he expressly and unambiguously declared his intent not to incriminate himself, were freely given and should not be suppressed.
 {¶ 25} In the second interview, Smith was given the opportunity to refuse to answer Det. Cooper's questions and never exercised that right. There was no evidence of persistence on the part of Det. Cooper in attempting to wear down Smith's resistance in order to coerce a confession. On the contrary, Smith seemed relieved by the confession. "It's been eating at me for a while," he stated. For these reasons, we find that none of the second interview should be suppressed.
 {¶ 26} Accordingly, the state's second and third assignments of error are well taken and are hereby sustained. The state's first assignment of error is overruled.
 {¶ 27} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm in part and reverse in part the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
BRYANT, P.J., and WALTERS, J., concur.
[1] See Miranda v. Arizona (1966), 384 U.S. 436.
[2] See State v. Dunlap (1995), 73 Ohio St.3d 308, 314; State v.Fanning (1982), 1 Ohio St.3d 19, 20.
[3] See Dunlap, supra; State v. Norman (1999), 136 Ohio App.3d 46,51.
[4] Norman, supra; State v. Anderson (1995), 100 Ohio App.3d 688,691.
[5] State v. Jones, Marion App. No. 9-02-39, 2003-Ohio-1576, at ¶ 8.
[6] (1975), 423 U.S. 96.
[7] State v. Metz (April 21, 1998), Washington App. No. 96 CA 48.
[8] Miranda, supra at 478.
[9] Id. at 444.
[10] Id. at 104.
[11] (1994), 512 U.S. 452.
[12] Id. at 461-462.
[13] State v. Murphy 91 Ohio St.3d 516, 520, 2001-Ohio-112.
[14] Id.
[15] Id. (citations omitted).
[16] See, State v. Darrah, Cuyahoga App. No. 81444, 2003-Ohio-2302, ¶ 17.
[17] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.