[Cite as *State v. Murphy*, 2014-Ohio-5002.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,                    CASE NO.  13-14-13

      v.

JENNIFER L. MURPHY,                    O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Seneca County Common Pleas Court
Trial Court No. 13-CR-0159

Judgment Affirmed

Date of Decision:  November 10, 2014


APPEARANCES:

    *Kent D. Nord* for Appellant

    *Angela M. Boes* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant, Jennifer L. Murphy ("Murphy"), brings this appeal from the judgment of the Court of Common Pleas in Seneca County, Ohio, denying her Motion to Suppress and Exclude ("motion to suppress"), finding her guilty of possession of cocaine, aggravated possession of drugs, permitting drug abuse, and endangering children, and sentencing her to a total of twenty months in the Ohio Department of Rehabilitation and Correction, upon her entering a plea of no contest to those charges. For the reasons that follow, we affirm the trial court's judgment.

{¶2} All facts relevant to this appeal are undisputed pursuant to Stipulations filed by the parties in the trial court. On August 12, 2013, a search warrant was issued for Murphy's residence, and "any persons, cell phones, vehicles on the property and vehicles registered to persons or under the control of persons found inside the residence at the time the warrant is executed." (R. at 33, Stipulations, Ex. 1.) Among other things, the warrant authorized the executing officers to search for "[a]ny illegally possessed drugs or controlled substances," "drug paraphernalia," "money, money obtained by drug sales, records of drug sales, items used to prepare drugs for sale or shipment, container, safes," and "any other items or instrumentalities used to facilitate drug use, drug trafficking or the crime under investigation." (*Id.*) The trial court summarized the events surrounding the execution of the search warrant as follows:

Once entrance was gained into the apartment, officers found a female (Jennifer Murphy) lying on the living room couch with a child * * * and another child * * * lying in a seat on the living room floor. As they continued on through the residence, officers confronted another female (Jillian Murphy) in a Northeast bedroom. At that time, the officers secured all of the adults found inside the apartment.

After the residence was secured, the officers entered the residence pursuant to the search warrant and identified the adult females as Jennifer Lynn Murphy and Jillian Nicole Murphy. They also identified the children * * *. The officers explained who they were, why they were at the apartment, and the authority they had to be there. As Detective Boyer walked through the apartment, the defendant indicated to several officers including Detective Boyer that she needed to go to the bathroom really bad. Detective Boyer advised the defendant that she needed to wait.

Upon Detective Boyer's request, officers searched the bathroom area for contraband and found nothing. Once the bathroom area was searched, detective Boyer allowed Jennifer to go to the bathroom but explained that she needed to be searched prior to entering the bathroom. After failed attempts to make contact with a female officer and upon asking Lieutenant Aaron Russell, Lt. Russell agreed to assist by searching the defendant and the other adult female. While Lt. Russell was removing the handcuffs from the defendant he asked numerous times if the defendant had anything on her person and she said no. Detective Boyer briefly left the apartment.

Lieutenant Russell's supplementary report states that Detective Boyer attempted to locate a female officer or deputy [but he] was unable to do so. Lieutenant Russell removed the defendant's handcuffs and inquired if she had any drugs or anything else on her that should concern him. She stated that she did not. Lt. Russell conducted a visual inspection of her pants and found that she had no pockets and nothing was observed in her waist band. As he and the defendant began to walk towards the bedroom the defendant placed her right hand in the left side of her bra and Lieutenant Russell heard cellophane crinkling. Lt. Russell grabbed the defendant's wrist and told her to stop moving as other officers secured her hands behind her back. He asked the defendant what was in the left side of her bra

and she stated nothing. Lieutenant Russell grabbed the elastic band at the bottom of her bra on her left flank and pulled the bra away from her body. In doing so, two items fell from the defendant's bra through her shirt and onto the floor.

(R. at 34, J. Entry at 2-3, Apr. 8, 2014.) The items were identified as containing US currency, a baggie of white powder, and a baggie of unknown blue pills. (R. at 33, Stipulations, Ex. 5, 6.)

{¶3} Based on the results of the search and additional evidence obtained by the police, Murphy was arrested and charged with four counts: (I) possession of cocaine, (II) aggravated possession of drugs, (III) permitting drug abuse, and (IV) endangering children. On February 24, 2014, Murphy filed her motion to suppress, requesting suppression of evidence found on her person during the search, as well as testimony of all police officers and agents of the State of Ohio and "all tangible evidence and test results procured by all said officers." (R. at 23, Mot. Suppress.) In the alternative, Murphy asked for a dismissal of the charges contained in counts I and II of the Indictment. As the basis for her suppression motion, Murphy alleged violations of the Ohio Constitution, Article 1, Section 14, as well as violations of the Fourth and Fourteenth Amendments to the U.S. Constitution, which protect people from unreasonable searches and seizures. She additionally alleged a violation of R.C. 2933.32, which is entitled "Conduct of body cavity search or strip search; conditions; methods; reports; offense." Under this provision, Murphy claimed a violation of law by the police officers, which she

claimed "should require the exclusion of the fruits of [this] illegal action." (R. at 23 at 4.)

{¶4} During the scheduled hearing on the motion, the parties agreed to stipulate to the facts and agreed that the matter would be decided on the pleadings. The parties filed Stipulations on April 3, 2014, and the trial court issued its Judgment Entry on April 8, 2014, denying Murphy's motion to suppress. Following the trial court's denial of the motion to suppress, Murphy entered a plea of no contest with consent to a finding of guilty. Subsequently, the trial court found Murphy guilty of all counts and sentenced her to a total of twenty months in prison.

{¶5} Murphy now appeals the trial court's denial of her motion to suppress raising two assignments of error for our review.

**ASSIGNMENT OF ERROR I**

**The trial court erred when it denied Appellant's Motion to Suppress and Exclude the search of Appellant's person in violation of Article I, Section 14 of the Ohio Constitution, the Fourth Amendment to the United States Constitution and 14th Amendments [sic] to the United States Constitution, and under Ohio Revised Code Section 2933.32.**

**ASSIGNMENT OF ERROR II**

**The trial court erred when it ruled that the search of Appellant was not a strip search as defined by Ohio Revised Code Section 2933.32.**

{¶6} An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman*, 136 Ohio App.3d 46, 51, 735 N.E.2d 953 (3d Dist.1999). We will accept the trial court's factual findings if they are supported by competent, credible evidence because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *Burnside*, 2003-Ohio-5372, at ¶ 8; *Norman*, 136 Ohio App.3d at 51. But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal standard as a matter of law because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review." *Burnside*, 2003-Ohio-5372, at ¶ 8; *Norman*, 136 Ohio App.3d at 52.

{¶7} Because this case does not involve any disputed facts, the only question before us is whether the trial court properly applied the law. We review this issue de novo and we start by addressing the second assignment of error.

### *Second Assignment of Error— Strip Search under R.C. 2933.32*

{¶8} In the second assignment of error Murphy asserts that Lieutenant Russell's act of grabbing the elastic band at the bottom of her bra and pulling it

away from her body constituted a strip search as defined in R.C. 2933.32. This statute states, in relevant parts:

(A) As used in this section:

* * *

(2) "Strip search" means an *inspection* of the genitalia, buttocks, breasts, or undergarments of a person that is *preceded by* the removal *or rearrangement* of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense.[1] * * *

(Emphasis added.) R.C. 2933.32.

{¶9} The language of the statute cannot be construed to apply to Murphy's situation so as to find that a strip search occurred. It is clear from the stipulated facts that no inspection of Murphy's breasts, undergarments, or other body parts listed in the statute occurred *after* Lieutenant Russell had rearranged the elastic band at the bottom of her bra and pulled it away from her body. Therefore, there is no statutorily proscribed "inspection of the genitalia, buttocks, breasts, or undergarments of a person that is *preceded by* the removal or rearrangement of some or all of the person's clothing." (Emphasis added.) R.C. 2933.32(A)(2).

---

[1] We note that under its express language the statute appears to apply "while the person is detained or arrested for the alleged commission *of a misdemeanor or traffic offense*." (Emphasis added.) R.C. 2933.32. Murphy did not allege that she was being detained for the alleged commission of a misdemeanor or a traffic offense, and the subsequent charges of drug possession were felonies.

{¶10} Therefore, the trial court did not err in finding that no strip search, as defined in R.C. 2933.32, had occurred in this case. The second assignment of error is overruled.

### First Assignment of Error—Denial of Motion to Suppress

{¶11} Murphy argues that the search performed by Lieutenant Russell was illegal, resulting in violation of the Ohio and the U.S. Constitutions and therefore, its results should be suppressed. Here, she relies on further subsections of R.C. 2933.32, which prohibit strip searches "except [as] authorized therein." *See State v. Wesley*, 5th Dist. Stark No. 1999CA00226, 2000 WL 329938, *3 (Mar. 27, 2000). Those subsections of R.C. 2933.32 state:

> (B)(1) Except as authorized by this division, no law enforcement officer, other employee of a law enforcement agency, physician, or registered nurse or licensed practical nurse shall conduct or cause to be conducted a body cavity search or a strip search.
>
> * * *
>
> (6) A body cavity search or strip search shall be conducted by a person or persons who are *of the same sex* as the person who is being searched and the search shall be conducted in a manner and *in a location that permits only the person or persons who are physically conducting the search and the person who is being searched to observe the search.*

(Emphasis added.) R.C. 2933.32.

{¶12} Murphy argues that a strip search performed by Lieutenant Russell, who was a person of opposite gender, and in a public area, violated R.C. 2933.32(B)(6) and as such, resulted in unreasonable search and seizure, in

- 8 -

violation of the Ohio and the U.S. Constitutions. Because we already found that no strip search occurred, the premise of Murphy's argument in the first assignment of error fails.

{¶13} Furthermore, Ohio law does not mandate suppression of the evidence for violation of state law only. *State v. Wurth*, 3d Dist. Putnam No. 12-05-17, 2006-Ohio-608, ¶ 7. The Ohio Supreme Court has held that "the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." *City of Kettering v. Hollen*, 64 Ohio St.2d 232, 235, 416 N.E.2d 598 (1980). "Only searches that are unreasonable in a constitutional sense mandate the suppression of evidence." *State v. Klemm*, 41 Ohio App.3d 382, 383, 536 N.E.2d 14 (1st Dist.1987). Therefore, in *Wesley*, the Fifth District Court of Appeals found a violation of R.C. 2933.32(B)(6), but then held that

> this violation was statutory in nature and not constitutional, and therefore, we find the exclusionary rule inapplicable. We reached a similar conclusion in *State v. Rucker* (Mar. 20, 1995), Stark App. No.1994 CA 00224, unreported. In *Rucker,* we stated:
>
> Although R.C. 2933.32 was violated, suppression of evidence is not among the remedies provided within the statute. The exclusionary rule is invoked only for violations of constitutional nature and will not be applied to statutory violations falling short of constitutional violations, absent a legislative mandate requiring the application of the exclusionary rule. *City of Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 234-235, 416 N.E.2d 598.*Id.* at 2.

2000 WL 329938, at *4-5 (Mar. 27, 2000).

**{¶14}** There is no legislative mandate requiring the application of the exclusionary rule for a violation of R.C. 2933.32(B)(6). The remedies provided for a violation of this section of the Revised Code are spelled out as follows:

> (D)(3) If a person is subjected to a body cavity search or strip search in violation of this section, any person may *commence a civil action* to recover compensatory damages for any injury, death, or loss to person or property or any indignity arising from the violation. In the civil action, the court may award punitive damages to the plaintiffs if they prevail in the action, and it may award reasonable attorney's fees to the parties who prevail in the action.
>
> * * *
>
> (E)(1) Whoever violates division (B) of this section is guilty of conducting an unauthorized search, a misdemeanor of the first degree.

R.C. 2933.32. As the statutory language explains, violation of R.C. 2933.32, if established, allows the person subjected to a strip search to "commence a civil action." R.C. 2933.32(D)(3). The statute does not warrant suppression.

**{¶15}** In sum, no strip search was conducted on Murphy and she did not establish a violation of state law that would result in the search being unconstitutional so as to require the application of the exclusionary rule. Murphy does not allege that any constitutional violations otherwise occurred[2] when Lieutenant Russell grabbed the elastic band at the bottom of her bra and pulled it away from her body. The first assignment of error is thus overruled.

---

[2] Although in the trial court, Murphy raised an issue of probable cause for "this search of her person in a non-private area of her residence" (R. at 23, Mot. Suppress at 3), she does not assign an error to the trial court's finding that in general, the search of her person was within the permissible scope of the search warrant (*see* R. at 34, J. Entry at 4, Apr.8, 2014).

*Conclusion*

**{¶16}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Court of Common Pleas in Seneca County, Ohio is therefore affirmed.

***Judgment Affirmed***

**ROGERS and SHAW, J.J., concur.**

**/jlr**