OPINION
{¶ 1} Defendant-Appellant, Deshay Jones, appeals a Marion County Common Pleas Court judgment entered upon a jury verdict of guilt to possession of an amount of cocaine in excess of five hundred grams but less than one thousand grams, a first degree felony in violation of R.C.2925.11(C)(4). On appeal, Jones argues that the trial court erred by failing to suppress evidence obtained as a result of the search of a vehicle in which he was a passenger. Upon review of the record, we do not find that Jones was seized or evidence was obtained in contravention of his constitutional rights. Jones further contends that there is no evidence that he had physical possession of the cocaine or direct knowledge that the cocaine was in the truck, concluding that the verdict was not supported by sufficient evidence. Viewing the evidence presented at trial in a light most favorable to the prosecution, we find that the jury could have reasonably concluded that Jones knew the vehicle contained cocaine and assisted the driver's trafficking activities, thereby constructively possessing the cocaine. Accordingly, we affirm the judgment of the trial court.
 {¶ 2} Facts and procedural posture pertinent to issues raised on appeal are as follows: On December 19, 2001, at approximately 12:20 a.m., Marion City Police Patrolman Staci Stought observed a black Chevrolet Avalanche traveling in front of her. As Patrolman Stought followed the vehicle, she noticed that an advertising frame obscured the license plate and was unable to determine the issuing state or whether the plate had a valid registration sticker. In addition, Patrolman Stought testified that the vehicle did not appear to have an operational license plate light, causing her to inadvertently interpose an "N" for an "M" when she called in the plate number. Upon reaching an intersection, the vehicle turned without signaling. When the incorrect plate number came back registered to a 1970 Chevrolet truck, she contacted dispatch indicating that she would be initiating a traffic stop.
 {¶ 3} Patrolman Stought then spoke with the driver, who identified himself as Gilberto Martinez, and observed Jones sleeping in the passenger seat. She informed Martinez that the reason for the stop was that the license plate was obstructed and did not appear to be illuminated. She then returned to her patrol car, where she waited for dispatch to run a check of Martinez's license and correct plate number. When his license was confirmed and the check produced no outstanding warrants, Patrolman Stought returned to the vehicle. Seeing that Jones was alert, she requested his information and returned to her vehicle for verification.
 {¶ 4} During this time, Patrolman Steven Ross was monitoring the radio and heard dispatch report that Martinez was from McAllen, Texas, a border town known for high narcotics activity. Patrolman Ross radioed Patrolman Stought, informing her that he wanted to speak with the occupants. After issuing warnings for the license plate obstruction and illumination violations and returning the men's identification cards and other documents, Stought provided directions to return to the highway. She then stated that she was done with them, but that there was another officer interested in speaking with them if they would not mind hanging around. The men agreed.
 {¶ 5} When Patrolman Ross arrived at the scene, he conversed with the men about where they were from and where they were going. At that point, Martinez indicated that he had nothing to hide and invited the officers to look inside his truck. The men exited the vehicle and Patrolman Ross began searching the truck's interior compartments. Martinez helped Patrolman Stought pull the tailgate down. While she searched the bed of the truck, Martinez retrieved the ignition key from the truck to unlock one of two toolboxes attached behind the cab. When Martinez unlocked the passenger-side toolbox, Patrolman Stought found what appeared to be rock cocaine. By 12:33 a.m., Martinez and Jones had been handcuffed, read their Miranda rights, and placed in separate cruisers. A subsequent inventory of the vehicle produced a set of scales, $9,000 in cash, and 2.7 kilograms of cocaine.
 {¶ 6} On January 10, 2002, the Marion County Grand Jury indicted Jones for one first-degree felony count of possession of cocaine, in violation of R.C. 2925.11(C)(4), with a major drug offender specification pursuant to R.C. 2941.1410 and R.C. 2929.01(X). Jones subsequently moved to suppress all evidence obtained during the stop and search of the vehicle. The motion was denied and the matter proceeded to jury trial. On May 8, 2002, the jury found Jones guilty of possessing an amount of cocaine in excess of 500 grams. The trial court sentenced Jones to an eight-year term of incarceration. From the judgment of conviction and sentence Jones appeals, presenting four assignments of error for our review.
 Assignment of Error Number One {¶ 7} The court below erred by not granting Appellant's Motion to Suppress.
 {¶ 8} Jones claims that there were no articulable facts giving rise to a reasonable suspicion to initiate an investigatory detention, continue that detention, search the vehicle, or arrest the vehicle's occupants. For the following reasons, we disagree.
 {¶ 9} Appellate review of suppression motions involves questions of both law and fact.[1] For motions to suppress, the trial court becomes the trier of fact and, as such, is in the best position to evaluate questions of fact, witness credibility,[2] and the weight of the evidence.[3] Consequently, we are bound to accept findings of fact that are supported by competent, credible evidence.[4] However, the application of the law to the trial court's findings of fact is subject to de novo review by appellate courts.[5] Accordingly, appellate courts "independently determine as a matter of law, without deference to the trial court's conclusion, whether they met the applicable legal standard."[6]
 {¶ 10} The United States Supreme Court has recognized that whenever a police officer accosts an individual and restrains his freedom to walk away the Fourth Amendment's prohibition against unreasonable seizures is implicated.[7] Therefore, in order for police to detain someone for preliminary investigative purposes absent probable cause of wrongdoing, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[8] When evaluating such intrusions, courts must judge the facts against an objective standard: "would the facts available to the officer at the moment of the seizure * * * `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[9] In other words, articulable facts must lead to a police officer's reasonable suspicion based upon the totality of the circumstances that criminal activity has or is about to occur.[10] Both passengers and the driver of a vehicle have standing regarding the legality of a traffic stop "because when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected."[11]
 Reasonable Grounds to Stop {¶ 11} Jones contends that there was no lawful justification to stop the vehicle, claiming that Stought "admitted that the only reason for the stop was the alleged discrepancy with the license plate" and that the mistake in reading the plate does not provide the basis for a valid stop because it "obviously, had nothing to do with * * * any problem with the vehicle."
 {¶ 12} Where an officer has an articulable suspicion or probable cause to stop a motorist for any criminal violation, including minor traffic violations, the stop is constitutionally valid.[12] R.C. 4503.21, states, in pertinent part, that: "No person who is owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark * * *. All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility." R.C. 4513.05 provides, in pertinent part, that: "Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear."
 {¶ 13} As an initial matter, we note that Patrolman Stought repeatedly testified that she initiated the stop because of the obstruction, lack of proper illumination, and discrepancy between the license plate and vehicle to which it was registered. She specifically informed Martinez that the reason for the stop was the license plate obstruction and lack of illumination. Uncontroverted evidence supports that the advertising frame completely obscured portions surrounding the plate number, including the issuing state or whether the plate had a valid registration sticker.[13] In addition, Stought attributed her difficulty reading the plate to the lack of sufficient illumination. While evidence was presented that the lights functioned two months later during an inspection at the impound hangar, there was no indication of the extent to which the lights illuminated the plate. Stought maintained that the lights did not appear to be functioning when she initiated the stop. Weighing this evidence and witness credibility, the trial court found that Stought also had reasonable suspicion to believe that the license plate was not properly illuminated. Affording appropriate deference to the trial court's factual determinations, we find there were sufficient articulable facts to support that Stought had reasonable suspicion, based upon the totality of the circumstances, to believe criminal activity had or was occurring.
 Detention {¶ 14} Jones alternatively argues that, assuming the initial stop to be justified, the continued detention after Patrolman Stought had issued her warnings for the obstruction and illumination violations was unlawful.
 {¶ 15} Once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop "to its underlying justification."[14] The length of the stop must "last no longer than is necessary to effectuate the purpose of the stop."[15] However, voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search.[16] "The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent."[17] "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave."[18] The focus of our inquiry necessarily leads us to examine the transition between the lawful detention and consensual exchange and determine whether the circumstances demonstrate that a reasonable person would understand that he or she had the freedom to refuse to answer further questions and could in fact leave.[19]
 {¶ 16} In this instance there appears to be a reasonably clear demarcation between the lawful detention and consensual exchange. After issuing the warnings and returning the men's identification cards and other documents, Patrolman Stought provided directions to return to the highway. She then stated that she was done with them, but indicated there was another officer interested in speaking with them "if they would not mind hanging around." Under such circumstances, we find that a reasonable person would understand that he or she had the freedom to refuse to answer further questions and could in fact leave. Therefore, we conclude, as did the trial court, that the men remained at the scene as an independent act of free will.
 Consent to Search {¶ 17} Without a warrant to search the vehicle and in the absence of probable cause or exigent circumstances, the validity of the search also depended upon Martinez's consent.
 {¶ 18} It is well-established a defendant waives his or her Fourth Amendment protection by consenting to a warrantless search.[20] "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and, while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."[21] The government has the burden of showing by clear and positive evidence that the consent was freely and voluntarily given.[22]
 {¶ 19} The record supports that consent was not only voluntary, but initiated by Martinez. When Patrolman Ross arrived at the scene, he approached the driver's window and began speaking with Martinez. Ross testified that he thanked the men for waiting around and then made small talk about McAllen, Texas and the surrounding area. He then inquired as to why the men were in Marion, what they were doing, and where they were coming from. The men responded that they became lost while traveling from Toledo to Columbus. Martinez then volunteered that the men had nothing to hide and that Ross was more than welcome to search the truck. Patrolman Stought confirmed this recitation of events. Nothing in this exchange appears to be product of express or implied duress or coercion. Conversely, this testimony presents clear and positive evidence that Martinez's consent was freely and voluntarily given.
 Scope of Search {¶ 20} Jones additionally argues that the officers exceeded the scope of Martinez's consent, asserting that Martinez only gave permission to search the vehicle's passenger compartment. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of `objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?"[23] When a suspect grants permission to an officer to search his car, a closed container or compartment may be opened if it is reasonable to believe that the suspect's consent to search the car includes consent to open the container.[24]
 {¶ 21} When the officers began searching the vehicle, Martinez proceeded to the back of the truck and assisted Patrolman Stought in opening the tailgate. Stought testified that Martinez then pointed out that the driver-side compartment of the toolbox was locked and stated that they could unlock it. Martinez then asked Patrolman Ross to retrieve the keys from the ignition so that he could open the toolbox. Ross responded that he would feel more comfortable if Martinez retrieved the keys and unlocked the toolbox himself. The tape shows Martinez retrieving the keys from the ignition, returning to the toolbox, and then unlocking and opening the driver-side toolbox compartment. Stought then proceeded to the passenger-side of the vehicle and, upon finding the compartment to be locked, asked Martinez whether he would unlock the compartment. Martinez stepped forward without comment and unlocked the compartment. When Stought peered into the passenger-side compartment, she observed several small plastic containers containing a white powder.
 {¶ 22} We find Martinez's initial offer to permit the officers to search his truck and subsequent comments and conduct regarding the toolboxes would lead a reasonable person to believe that his consent to search was not limited to the vehicle's passenger compartment. Furthermore, although Martinez did not offer to unlock the passenger-side compartment, his offer to open the driver-side compartment and lack of objection to Stought's request to unlock the other compartment would lead a reasonable person to believe that his consent extended to that compartment. Accordingly, we find that Martinez's consent to remain at the scene and to search the vehicle and toolbox were provided freely and voluntarily without duress or coercion.
 Statements {¶ 23} Jones additionally contends that, since the continued detention and subsequent search were unlawful, the seizure and questioning of the men stemmed from an unlawful search and their statements should have been suppressed as fruit of the poisonous tree. Based on the forgoing discussion, we find this contention to be meritless.
 Probable Cause to Arrest {¶ 24} Finally, Jones argues that "there was no probable cause to arrest [him], even upon finding the contraband, because there was no evidence to suggest that the contraband was possessed by [him], or connected to him in any way."
 {¶ 25} However, the officers' observation of the large quantity of cocaine during the consensual search of the vehicle provided the officers with probable cause to arrest the vehicle's occupants for possession of cocaine.[25]
 {¶ 26} Accordingly, Jones' first assignment of error is overruled.
 Assignment of Error Number Two {¶ 27} The court below erred by granting the State's Motion to Amend the Indictment on the morning of trial and by instructing the jury on a first degree felony offense with a major drug offender specification when the charging instrument, the indictment, only set forth the basis for, at most, a second degree felony.
 {¶ 28} For his second assignment of error, Jones avers that the trial court erred by permitting the State to amend the indictment the morning of trial. He claims that the amendment elevated the crime from a second-degree felony to a first-degree felony, thereby changing the identity of the crime.
 {¶ 29} The indictment at issue appears as follows:
 COUNT I — Possession of Cocaine [R.C. 2925.11(A)/(C)(4)], F1 {¶ 30} Deshay T. Jones, at Marion County, Ohio, on or about December 19, 2001, did knowingly obtain, possess, or use a controlled substance, and the drug involved in the violation is cocaine, or a compound, mixture, preparation, or substance containing cocaine, and the and the amount of the drug involved exceeds 100 grams of cocaine, that isnot crack cocaine, or equals or exceeds 100 grams crack cocaine.
 Major Drug Offender Specification [R.C. 2941.1410] {¶ 31} It is further found and specified that the Defendant is a major drug offender as defined in R.C. 2929.01(X).[26]
 {¶ 32} R.C. 2925.11(C)(4)(f) provides, in pertinent part: If the amount of the drug involved equals or exceeds one thousand grams ofcocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine, possession is a felony of the first degree, the offender is a major drug offender, * * *.[27]
 {¶ 33} On the morning of trial, the State moved to correct a typographical error in the single-count indictment. Specifically, the State requested that it be permitted to amend the indictment to indicate that the amount of the drug involved exceeded "1000 grams of cocaine that is not crack cocaine," as opposed to "100 grams of cocaine that is not crack cocaine." Jones contends that "the State should have proceeded on the indictment signed by the grand jury, and either proven the felony-one with evidence of crack cocaine or proven the felony-two with evidence of powder cocaine."
 {¶ 34} Crim.R. 7(D) provides that a "court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." In interpreting the foregoing language, the Ohio Supreme Court has held that "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment."[28] Concomitantly, "an indictment may be amended to correct a clerical error so long as it does not change the identity of the offense."[29]
 {¶ 35} In the present case, it is apparent that the original indictment contained an internal inconsistency and that the State was merely correcting a clerical error. The original indictment identified the offense as a first-degree felony with a major drug offender specification and referenced corresponding Revised Code sections. Jones does not claim and has presented no evidence supporting that he was given inadequate notice of what the State intended to prove at trial or was otherwise prejudiced in preparing his defense. Therefore, the trial court acted appropriately in permitting the State to amend the indictment to correct the typographical error.
 {¶ 36} Accordingly, Jones' second assignment of error is overruled.
 Assignment of Error Number Three {¶ 37} The jury verdict below was based upon insufficient evidence to convict Appellant of the crime charged and thus violated Appellant's constitutional right to due process and a fair trial.
 {¶ 38} For his third assignment of error, Jones claims that there is no evidence that he had physical possession of the cocaine or direct knowledge that the cocaine was in the truck, concluding that he could not be convicted of possession.
 {¶ 39} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[30] Weight of the evidence and credibility of witnesses are primarily reserved for the trier of facts.[31]
 {¶ 40} In this case, the State did not allege actual possession, but rather that Jones constructively possessed the drugs by aiding and abetting Martinez's trafficking activities. R.C. 2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." "Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense."[32]
 {¶ 41} R.C. 2923.03 states, in relevant part: "(A) No person, acting with the kind of culpability required for the commission of an offense shall do any of the following: * * * (2) Aid or abet another in committing the offense." R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Accordingly, to sustain a conviction, the State was required to present evidence that Jones knowingly aided or abetted Martinez in possessing cocaine. A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.[33]
 {¶ 42} Although the phrase "aid and abet" is not defined within the complicity statute, courts have generally held that a criminal defendant has aided and abetted a crime if he has assisted, strengthened, counseled, incited or encouraged another person to commit the offense.[34] "The state may demonstrate that an accused is guilty of aiding and abetting by direct or circumstantial evidence. Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed."[35]
Expressed concurrence or conduct contributing to an unlawful act, may constitute aiding or abetting the act.[36] Possession of drugs is necessarily incident to transacting drug sales, and one who aids or abets another in trafficking narcotics may be found guilty of possession.[37]
 {¶ 43} Following his arrest, Jones was interviewed by three law enforcement officers. During the interviews, Jones stated that he had known Martinez for approximately one year. He indicated that in the days preceding the arrest, he had been contacted by Martinez. Martinez advised Jones that he would be bringing five to six kilograms of cocaine to Ohio and wanted Jones' assistance in procuring buyers interested in purchasing large quantities of cocaine. Jones agreed to assist Martinez and was to be paid $500 for every kilogram of cocaine sold. Jones stated that he contacted and made arrangements to meet with a potential purchaser in Toledo, Ohio. Martinez picked up Jones at his residence the morning of December 18, 2001, and Jones provided directions to the potential purchaser's residence in Toledo. When the men arrived in Toledo, Martinez negotiated with Jones' contact. Jones proved varying accounts of whether the transaction had been successful, but stated to one officer that eight ounces of cocaine had been sold for $5,500. Jones indicated that they were returning from Toledo when they became lost and were arrested in Marion. Although Jones attempted to deny any knowledge that the truck contained cocaine, he admitted to two of the officers that he was aware that the drugs were in the vehicle.
 {¶ 44} Viewing the evidence presented at trial in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of possession proved beyond a reasonable doubt. In this instance, the jury reasonably concluded that Jones encouraged and assisted Martinez's trafficking activities and had constructive possession of the cocaine. Accordingly, Jones' third assignment of error is overruled.
 Assignment of Error Number Four {¶ 45} The court below erred by sentencing Defendant, who had never previously served a prison term, to more than the minimum sentence.
 {¶ 46} For his final assignment of error, Jones submits that he should have been sentenced to the minimum term because he has never been to prison. He maintains that there was no factual basis supporting that imposition of the shortest term would demean the seriousness of the offense or that that a longer term was necessary to protect the public from future crime.
 {¶ 47} R.C. 2953.08(G)(2) authorizes appellate courts to increase, reduce, or otherwise modify or vacate a sentence and remand the matter to the trial court for re-sentencing if the court finds by clear and convincing evidence: (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13; division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or] (b)That thesentence is otherwise contrary to law.
 {¶ 48} Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.[38]
 {¶ 49} A felony of the first degree warrants a definite prison term of three, four, five, six, seven, eight, nine or ten years,[39]
and it is presumed that a prison term is necessary to comply with the purposes and principles of sentencing under R.C. 2929.11.[40] Pursuant to R.C. 2925.11(C)(4)(e), Jones was subject to a mandatory prison term. However, where, as here, a prison term is imposed upon an offender for a felony and the offender has not previously served a prison term, R.C.2929.14(B) directs the court to impose the shortest term unless it finds on the record that "the shortest term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 50} At the sentencing hearing, the trial court made the appropriate statutory findings for imposition of more than the minimum sentence. In support thereof, the court noted the offense was committed for hire as a part of organized criminal activity involving large amounts of drugs and the potential for violence. The court further found that although Jones had not previously been convicted of any crimes, there was evidence that he had engaged in significant trafficking activities throughout the past seven years and was presently subject to a federal indictment concerning those activities. "[I]t is well established that a sentencing court specifically may consider other arrests and criminal charges, even if these incidents did not result in conviction."[41]
Therefore, we do not find that Jones has clearly and convincingly demonstrated that the sentence was unsupported by the record or contrary to law. Accordingly, Jones' fourth assignment of error is overruled.
 {¶ 51} Having found no error prejudicial to the appellant herein, in the matters assigned and argued, the judgment of the Marion County Common Pleas Court is hereby affirmed.
Judgment affirmed.
 SHAW and CUPP, JJ., concur.
[1] State v. Norman (1999), 136 Ohio App.3d 46, 51.
[2] See, e.g., State v. Mills (1992), 62 Ohio St.3d 357, 366, citingState v. Fanning (1982), 1 Ohio St.3d 19, 20.
[3] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; Fanning, 1 Ohio St.3d at 20.
[4] Norman, 136 Ohio App.3d at 51.
[5] Id.; State v. Anderson (1995), 100 Ohio App.3d 688, 691.
[6] Village of McComb v. Andrews (Mar. 22, 2000), Hancock App. No. 5-99-41.
[7] Terry v. Ohio (1968), 392 U.S. 1, 16, 88 S.Ct. 1868,20 L.Ed.2d 889.
[8] Id. at 21. See, also, State v. Andrews (1991), 57 Ohio St.3d 86,87.
[9] Terry, 392 U.S. at 21-22.
[10] Id.; Andrews, 57 Ohio St.3d at 87-88.
[11] State v. Carter (1994), 69 Ohio St.3d 57, 63.
[12] Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12.
[13] Cf. State v. Rose (June 14, 1993), Clark App. No. 2960.
[14] Florida v. Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319,75 L.Ed.2d 229; see, also, State v. Gonyou (1995), 108 Ohio App.3d 369,372.
[15] Royer, 460 U.S. at 500.
[16] State v. Robinette (1997), 80 Ohio St.3d 234, 241, citing Davisv. United States (1946), 328 U.S. 582, 593-594, 66 S.Ct. 1256,1261-1262, 90 L.Ed. 1453, 1460-1461.
[17] State v. Barnes (1986), 25 Ohio St.3d 203, 208-209, citingSchneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854, and United States v. Mendenhall (1980), 446 U.S. 544,100 S.Ct. 1870, 64 L.Ed.2d 497.
[18] Robinette, 80 Ohio St.3d at paragraph three of syllabus.
[19] See Id. at 244-245.
[20] Barnes, 25 Ohio St.3d at 208.
[21] Robinette, 80 Ohio St.3d at 242-243, quoting Bustamonte,412 U.S. at 248-249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.
[22] State v. Posey (1988), 40 Ohio St.3d 420, 427.
[23] Florida v. Jimeno (1991), 500 U.S. 248, 250-51,111 S.Ct. 1801, 114 L.Ed.2d 297.
[24] State v. Hill (Nov. 7, 1997), Hamilton App. No. C-960963, citingJimeno, supra; State v. Patterson (1991), 95 Ohio App.3d 255.
[25] See, e.g., New York v. Belton (1980), 453 U.S. 454,101 S.Ct. 2860, 69 L.Ed.2d 768.
[26] Emphasis added.
[27] Emphasis added.
[28] State v. O'Brien (1987), 30 Ohio St.3d 122, paragraph two of syllabus.
[29] State v. Earle (1997), 120 Ohio App.3d 457, 467.
[30] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[31] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[32] State v. Herring, 94 Ohio St.3d 246, 251, 2002 Ohio 796 (citation omitted).
[33] R.C. 2901.22(B).
[34] State v. Peavy (Sept. 26, 2002), Cuyahoga App. No. 80480,2002-Ohio-5067, ¶ 24; State v. Howard (Aug. 24, 1999), Marion App. No. 9-99-12.
[35] State v. Mendoza (2000), 137 Ohio App.3d 336, 342, quotingState v. Stepp (1997), 117 Ohio App.3d 561, 568-569.
[36] Mendoza, 137 Ohio App.3d at 342.
[37] State v. Miller (July 2, 1992), Cuyahoga App. No. 60678, judgment affirmed by (1994), 69 Ohio St.3d 1480.; State v. Lovelace (June 27, 1991), Cuyahoga App. No. 58657; State v. Johnson (Mar. 4, 1982), Cuyahoga App. No. 43650; Cf. State v. Howard (Aug. 24, 1999), Marion App. No. 9-99-12.
[38] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v.Ledford (1954), 161 Ohio St. 469.
[39] R.C. 2929.14(A)(1).
[40] R.C. 2929.13(D).
[41] State v. Pitts (June 30, 1999), Lucas App. No. L-98-1203, citingState v. Burton (1977), 52 Ohio St.2d 21, 23; Maple Heights v. Dickard
(1986), 31 Ohio App.3d 68, 71.