OPINION
{¶ 1} Defendant-appellant, Deborah Gibson, appeals her conviction in the Butler County Court of Common Pleas for permitting drug abuse and involuntary manslaughter. We affirm appellant's conviction.
 {¶ 2} This case involves the death of 16-year-old David VanCleve.[1]
David was *Page 2 
appellant's biological grandson, but had resided with appellant since birth. Appellant's husband, Kenneth Gibson, had been diagnosed with cancer and was taking a number of prescription pain medications because of his illness, including, but not limited to liquid morphine, Oxycontin, and Soma. At the time of David's death, his best friend, Richard Bush, was spending a significant amount of time in the home of David and his grandparents.
 {¶ 3} On August 2, 2006, appellant called 911 and reported that David was unconscious. Upon their arrival, paramedics attempted to resuscitate him, but found him dead at the scene. The toxicology report indicated that significant amounts of morphine, oxycodone, and meprobamate (Soma) were found in his blood, and the coroner's report later determined that David's cause of death was an overdose of morphine and other drugs.
 {¶ 4} Although the police originally thought David died from an accidental overdose, they later received information from Virginia Applegate, Bush's girlfriend and a person present at appellant's residence on the day David died, which led them to direct their attention to appellant and her husband. After questioning appellant and her husband, the police arrested both. Appellant was subsequently indicted for permitting drug abuse and involuntary manslaughter.
 {¶ 5} At trial, appellant denied any and all involvement with the distribution of drugs in her home. Several witnesses, however, testified otherwise. Bush testified that on August 1, 2006, the day before David's death, Applegate and appellant's husband went to a CVS pharmacy to fill his prescription for liquid morphine and Oxycontin. Upon their return to appellant's residence, both appellant and her husband gave Bush and David some of the liquid morphine through two droppers. Bush testified this was not unusual, as it was common for both appellant and her husband to provide the morphine to them.
 {¶ 6} Bush also testified that he spent the night of August 1 at appellant's residence but did not recall much about the following day because he was "real messed up" on the *Page 3 
drugs given to him. He did recall, however, that he, Applegate, and perhaps some other people went to the mall at one point, but ultimately returned to the Gibson residence in the afternoon. He testified that they were worn out from the drugs, and he, Applegate, and David decided to lie down and take a nap. When he awoke, Bush tried to hook up a DVD player for the Gibsons. Because he was having difficulties connecting the wires together, appellant went into the room where David was sleeping for his help, at which time she found him unconscious.
 {¶ 7} Applegate similarly testified that on August 1, she took Bush and David to the mall and then drove appellant's husband to the pharmacy to fill his prescription. Upon arriving back at appellant's residence, appellant gave Soma medicine to David, and appellant's husband gave some to Bush. Applegate also saw David and Bush getting medicine from a dropper. Applegate testified that appellant offered some Somas to her, because she had been complaining of a headache. Applegate said appellant called the drug "her candy" and referred to the drug's effects as a "Soma coma." Applegate refused the medicine. She spent the night at appellant's residence and was awakened by David on August 2.
 {¶ 8} When Applegate got out of bed on August 2, she went into the living room and saw appellant give David another drop of her husband's medicine in "the blue bottle." Shortly thereafter, Applegate took David and Bush and someone else to the Towne Mall in Middletown. She testified that David was falling asleep, sweating, and dropping his cigarette on himself in the car and that Bush was also "messed up." After a short time, they returned to appellant's residence. Applegate testified that upon their return, she observed David tell appellant he was not "F'd up enough," and appellant gave him another drop from the blue bottle. At that time, Bush and Applegate decided to take a nap. When Applegate woke up, she testified that she hung around the house for awhile, but had to run home to her house to *Page 4 
change clothes. She recalled that she arrived back at appellant's residence shortly before appellant asked Bush to hook up the DVD player and appellant found David unconscious.
 {¶ 9} At the close of the case, the jury found appellant guilty of permitting drug abuse and involuntary manslaughter. After denying appellant's motion for a new trial, the trial court sentenced her to a total of ten years in prison and suspended her driving privileges for five years. Appellant timely appeals her conviction, raising four assignments of error.
 {¶ 10} Appellant's Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED THE STATE TO AMEND THE BILL OF PARTICULARS."
 {¶ 12} Appellant argues the state is not permitted to amend a bill of particulars if such amendment necessarily changes the name and identity of the crime stated in the indictment. Essentially, she asserts the state, in amending the bill of particulars, modified the underlying felony to the involuntary manslaughter charge, which consequently changed the name or identity of the crime with which she was charged. She also claims that because the original bill of particulars was presumably based on the grand jury testimony, the amendment to the bill of particulars "acted to cause [appellant] to be tried on a charge for which she was not indicted."
 {¶ 13} On October 5, 2006, a grand jury indicted appellant on two counts: (1) permitting drug abuse and (2) involuntary manslaughter. As permitted by R.C. 2941.14(A), the indictment for voluntary manslaughter did not contain an allegation of the underlying felony.
 {¶ 14} Per appellant's request, the state filed its original bill of particulars on October 17, 2006, in which it set forth in count two that "On or about August 02, 2006, * * *, [appellant] did cause the death of another as a proximate result of the offender's committing or *Page 5 
attempting to commit a felony, to wit: during the time period in the indictment, [appellant] permitted and/or allowed the Co-Defendant [appellant's husband] to furnish and/or administer oxycodone, a Schedule II controlled substance and or morphine, a Schedule I controlled substance to [David] and [appellant] knew [David] was a juvenile and/or reckless in that regard and that the Co-Defendant was at least two years older than [David]. As a proimate [sic] result of [appellant] committing the felony offense of Permitting Drug Abuse, [David] died of an overdose of oxycodone and/or morphine, which constitutes the offense of INVOLUNTARY MANSLAUGHTER, a First Degree Felony, in violation of R.C. § 2903.04(A)."
 {¶ 15} On March 2, 2007, the state filed an amended bill of particulars, amending facts under count two to include the following: "* * * [Appellant] either furnished and/or administered oxycodone, * * * and/or morphine * * * to [David] or permitted/and or allowed the Co-Defendant to furnish and/or administer [the controlled substances to David]. * * * As a proximate result of [appellant] committing the felony offense of either Corrupting Another with Drugs and/or Permitting Drug Abuse, [David] died of a [drug overdose], which constitutes the offense of INVOLUNTARY MANSLAUGHTER * * *."
 {¶ 16} Pursuant to Crim. R. 7(D), "[t]he court, may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Crim. R. 7(E) further provides, "[a] bill of particulars may be amended at any time subject to such conditions as justice requires." The trial court's decision to permit the amended bill of particulars is reviewed under an abuse of discretion standard. See State v.Perales, Delaware App. No. 06-CA-A-12-0093, 2008-Ohio-58, ¶ 140. To demonstrate error, appellant must show not only that the trial court abused its discretion, but that the amendment prejudiced her defense.State v. Hand, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 182. *Page 6 
 {¶ 17} The trial court did not abuse its discretion in permitting the state to file an amended bill of particulars, as the name and identity of the crimes alleged did not change. As previously mentioned, under R.C. 2941.14(A), an indictment for involuntary manslaughter need not contain an allegation of the underlying felony. Therefore, in examining the indictment and amended bill of particulars, no discrepancies in the name or identity of involuntary manslaughter are apparent. See State v.Elam, 129 Ohio Misc.2d 26, 2004-Ohio-7328, ¶ 11-12, citing State v.Vitale (1994), 96 Ohio App.3d 695. In addition, appellant has not produced, nor has this court's research uncovered, any authority that prohibits the state from offering more than one factual basis for a charge in the indictment or any authority that requires the state to indict appellant on the underlying felony in order to argue that felony as a basis for an involuntary manslaughter charge. See id. at ¶ 13, citing State v. Davis, Clark App. No. 2002-CA-43, 2003-Ohio-4839 (affirming two involuntary manslaughter convictions where underlying misdemeanors were not charged in the indictment).
 {¶ 18} Furthermore, appellant has failed to show how her defense was prejudiced when the trial court permitted the state to amend the bill of particulars. Although she argues she had to adjust her defense based on an additional set of facts and had to prepare for witnesses at trial who indicated appellant was the one to administer the drugs to David, the record indicates a pretrial document was filed with the court on March 2, 2007, the same day the bill of particulars was amended, in which the trial judge granted appellant's motion to continue the trial set to begin March 5, 2007, and rescheduled it to begin on April 30, 2007. Appellant was given an additional eight weeks to prepare her defense, and the evidence needed to refute the amended facts alleged would have been readily apparent to appellant, as the amended facts referred to her involvement in the events surrounding David's death. See Hand
at ¶ 182-183 (finding that the defendant was not prejudiced by a lack of notice because he did not request a continuance upon receiving the amended bill of particulars at *Page 7 
the close of the evidence at trial, which would have been available if counsel needed additional time to prepare a defense for the alternate theory); Perales at ¶ 145 (finding the defendant was not prejudiced by an amended bill of particulars filed the morning of trial because defendant had the opportunity to cross-examine the witness testifying to the amended facts). Accordingly, we overrule appellant's first assignment of error.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HER MOTION FOR A NEW TRIAL."
 {¶ 21} Appellant argues the state failed to provide her with exculpatory evidence in discovery, and therefore, pursuant to Brady v.Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, she is entitled to a new trial. Appellant claims that in one jail-monitored telephone conversation between herself and her daughter, Amber Neff, she and her daughter were talking about Neff's interview with police officers, and Neff stated that she was questioned by the police three times and her fourth interview was recorded.
 {¶ 22} During the telephone call, Neff also relayed to appellant the conversation she had with police. She stated, "I was like the only medication my mom has ever given my dad is his Depakote and his cancer medication. I was like the liquid stuff my dad controlled and some of the time he don't [sic] even remember where he puts it, so we don't even know where's it at." She also stated to appellant, "You never given anyone no liquid, anything," and "I've never seen you give him anything."
 {¶ 23} Appellant argues this phone call indicates that Neff made statements to the police, and the state never disclosed records of those interviews to appellant's counsel. Appellant also argues that when the state turned over the copy of the recorded jail statements, it failed to note the particular conversation out of "hours upon hours" of recorded telephone calls, and it was therefore an undue burden on appellant's counsel to locate and *Page 8 
determine the significance of this particular phone call.
 {¶ 24} Because the failure to disclose material, exculpatory evidence violates a defendant's Fourteenth Amendment right to due process, an appellate court reviewing a trial court's resolution of a motion for a new trial claiming a Brady violation utilizes a due process analysis rather than an abuse of discretion analysis. State v. Carr, Clermont App. No. CA2004-01-006, 2005-Ohio-417, ¶ 7 (citation omitted). We must therefore determine whether the state suppressed evidence that is material to appellant's guilty, irrespective of the good faith or bad faith of the state. Id.
 {¶ 25} In order to establish a Brady violation, appellant must demonstrate three elements: (1) the state failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material. See Moore v. Illinois (1972), 408 U.S. 786, 794,92 S.Ct. 2562. Both exculpatory and impeachment evidence may be the subject of a Brady violation, so long as the evidence is material.United States v. Bagley (1985), 473 U.S. 667, 676, 105 S.Ct. 3375.
 {¶ 26} In determining whether the state improperly suppressed evidence favorable to the accused, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id. A "reasonable probability" is one sufficient to undermine confidence in the outcome. Id.; Carr at ¶ 9 (citations omitted).
 {¶ 27} In this case, appellant has failed to establish the requirements necessary to prove a Brady violation. First, appellant was given the CD recordings and police officer notes of all of her recorded phone calls made from the jail, even though the call at issue was not specifically listed. The trial court indicated on the record at the July 27, 2007 disposition hearing that the state provided appellant with these recordings shortly before the original trial date in case there was any Brady material contained on the CDs. Because of the late *Page 9 
disclosure and amended bill of particulars, the court granted appellant's motion for a continuance so that counsel would be able to exercise due diligence and review those CDs. Therefore, the state complied with Brady in supplying the recordings to appellant.
 {¶ 28} Secondly, as the trial court found, the CD recordings were a sufficient form of Neff's statements, and the state did not violateBrady in failing to disclose Neff's actual statements recorded by detectives in her interview. In disclosing the statements made by Neff during the recorded phone call, appellant had in her possession information directly from the mouth of the witness, including the fact that she says she said those things to detectives. Furthermore, the statement was made to appellant, and defense counsel certainly had access to appellant throughout the trial. Appellant would have remembered with whom she had and had not spoken. The CD recordings alone were enough to provide appellant with evidence to call Neff to the stand and possibly impeach her with her own voice. Notably, had there been any inconsistencies between Neff's statement made to detectives and her statements describing what she said to detectives, the state's disclosure of the detective's notes would not have resulted in a reasonable probability that the proceeding would have been different.
 {¶ 29} Finally, this court questions the materiality of the statements. Under appellant's conviction for involuntary manslaughter, the state alleged that she either administered the drugs to David or permitted someone else to administer the drugs to David. These statements made by Neff, that her mother did not control the liquid medication, do nothing to negate the state's allegation that appellant permitted her husband to administer the drugs to David. Furthermore, the toxicology report indicates that David also had in his system significant amounts of meprobamate, which would have come from the Soma pills given to David.
 {¶ 30} Not only were the CD recordings provided to appellant by the state sufficient to *Page 10 
satisfy the Brady requirements, but the statements in question were not material to appellant's defense. Accordingly, appellant's second assignment of error is overruled.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 33} Appellant argues that she received ineffective assistance of counsel during her trial. Specifically, she argues trial counsel was in receipt of significant exculpatory evidence that could have thrown doubt on the validity of the state's case against her. Nevertheless, appellant asserts, trial counsel failed to use the information and claimed she was not aware of it, even though trial counsel admitted she received the underlying documentation — the CD recording of the jail telephone conversation between Neff and appellant — that could have alerted trial counsel to the exculpatory nature of Neff's testimony.
 {¶ 34} To prove a claim of ineffective assistance of counsel, the Supreme Court set forth a two-part test that requiring appellant to establish that (1) her trial counsel's performance was deficient; and (2) the deficient performance prejudiced the defense to the point of depriving appellant of a fair trial. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052; State v. Myers, Fayette App. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing Strickland.
 {¶ 35} In order to establish the first prong, appellant much show that her trial counsel's representation "fell below an objective standard of reasonableness." Strickland at 688. Attorneys, however, are given a "heavy measure of deference" in their decision making, and there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In establishing the second prong, appellant must show "a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different." Id. at 694. Failure to make an adequate showing on *Page 11 
either the "performance" or "prejudice" prongs of theStrickland standard is fatal to appellant's claim. Id. at 697.
 {¶ 36} In this case, appellant's trial counsel subpoenaed Neff, but elected not to call her as a witness at trial. The decision whether to call a witness is generally a matter of trial strategy and should not be second guessed. State v. Jones, Butler App. No. CA2004-06-144,2005-Ohio-3887, ¶ 15, citing State v. Williams, 99 Ohio St.3d 493,2003-Ohio-4396, at ¶ 125-127 (decisions on evidence to present and witnesses to call are issues of trial strategy and are committed to counsel's professional judgment). The Ohio Supreme Court has held that deference to trial counsel is still given even when counsel's strategy was "questionable" and better strategies were available. State v.Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied, 449 U.S. 879,101 S.Ct. 227. We find the decision to not call Neff to the stand fell within the confines of sound trial strategy and did not constitute ineffective assistance of counsel. Accordingly, appellant's third assignment of error is overruled.
 {¶ 37} Assignment of Error No. 4:
 {¶ 38} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT SUBMITTED TESTIMONY REGARDING PRIOR BAD ACTS."
 {¶ 39} Appellant argues the trial court violated Evid. R. 404(B) when it admitted the testimony of Karen Jamison, who testified that in the fall of 2005, she went to appellant's home upon her release from jail and saw both appellant and her husband hand out drugs, including morphine and Xanax, to number of teenagers in the trailer where they lived at that time.
 {¶ 40} The admissibility of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122,129. *Page 12 
 {¶ 41} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. Evid. R. 404(B); State v.Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 11, citingState v. Curry (1975), 43 Ohio St.2d 66, 68-69. Such evidence may be used for other purposes, however, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid. R. 404(B); Walker at ¶ 11, citing State v.Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 64 (testimony of a previous argument between appellant and victim was evidence of motive);State v. Crutchfield, Warren App. No. CA2005-11-121, 2006-Ohio-6549, ¶ 34
(testimony that appellant was aware that bullets fired from his property could reach houses one-half mile away was evidence of knowledge). As with other types of evidence, admission of other acts testimony must not only meet the prerequisites of Evid. R. 404(B), but it also must pass muster under Evid. R. 403(A), which requires the exclusion of unfairly prejudicial evidence. State v. Patterson, Butler App. No. CA2001-01-011, 2002-Ohio-2065.
 {¶ 42} In this case, the trial court did not abuse its discretion in admitting the testimony of Jamison. The jury convicted appellant of permitting drug abuse, in violation of R.C. 2925.13(B) and involuntary manslaughter, in violation of R.C. 2903.04(A), both of which required the state to prove appellant acted knowingly in committing the crimes.
 {¶ 43} Appellant's knowledge of the drug distribution to David was in dispute during trial. Appellant testified that she did not know David was given the drugs until the day before he died. Jamison's testimony demonstrated that appellant knew that drugs had been distributed in her house and that she herself had participated in the distribution of drugs to minors in the past. Therefore, although Jamison's testimony was unfavorable to appellant, it was relevant to show appellant acted knowingly and was not unfairly prejudicial to her. Accordingly, appellant's fourth assignment of error is overruled. *Page 13 
 {¶ 44} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] At trial, David is repeatedly referred to as "David VanCleve," "David Gibson," and "Bubba." For purposes of this opinion, we will refer to him as David. Also, appellant repeatedly referred to David as her son, and raised him as such, despite that he is her biological grandson. For purposes of this opinion, we will refer to him as her grandson. *Page 1